**WEIL INSURANCE AGENCY, INC., a California corporation, doing business as Jerry C. Weil & Associates**

v.

**The MANUFACTURERS LIFE INSURANCE COMPANY, et al.**

**No. C 91-3113 SC.**

United States District Court, N.D. California.

November 20, 1992.

As Amended Upon Stipulation, Jan. 26, 1993.

Eugene Crew, Townsend & Townsend Khourie & Crew, San Francisco, CA, for plaintiff Weil Ins. Agency Inc.

H. Joseph Escher, III, Howard Rice Nemerovski Canady Robertson & Falk, San Francisco, CA, for defendant Mfrs. Life Ins. Co.

Natasha Lovas, Adams Duque & Hazeltine, San Francisco, CA, for defendant Alexander Hamilton Life Ins. Co. of America.

Peter E. Davis, San Francisco, CA, for defendant Metropolitan Life Ins. Co.

Richard J. Kilmartin, Knight Boland & Riordan, San Francisco, CA, for defendant New York Life Ins. Co.

James J. Garrett, Morrison & Foerster, San Francisco, CA, for defendant Transamerica Occidental Life Ins. Co.

Frank Gooch, III, Gilchrist & Rutter, P.C., Santa Monica, CA, for defendant First Colony Life Ins. Co.

James D. Biernat, James D. Biernat Law Offices, Foster City, CA, for defendant Safeco Life Ins. Co.

Raoul D. Kennedy, Crosby Heafey Roach & May, Oakland, CA, for defendant United Pacific Ins. Co.

Robert H. King, Jr., Sonnenschein Nath & Rosenthal, San Francisco, CA, for defendant Allstate Life Ins. Co.

Shand Stephens, Bronson Bronson & McKinnon, San Francisco, CA, for defendant America Intern. Life Assur. Co. of New York.

Robert M. Mitchell, Seyfarth Shaw Fairweather & Geraldson, San Francisco, CA, for defendant Prudential Ins. Co. of America.

Robert M. Dell, Latham & Watkins, San Francisco, CA, for defendant Integrity Life Ins. Co.

Dale E. Fredericks, Darryl M. Woo, Laura L. Goodman, Sheppard Mullin Richter & Hampton, San Francisco, CA, for defendants Ringler Ins. Agency, Ringler Associates Pa-

cific, Inc., Ringler Associates Sacramento, Inc., Ringler Associates San Francisco, Inc., Ringler Associates Bay Area, Inc., Ringler Associates Inc., and Robert S. Bell.

Jack M. O'Brien, O'Brien Hammond Conway, San Francisco, CA, for defendant Kenneth H. Wells & Associates Inc.

Mark LeHocky, Weld Freeland Cooper & LeHocky, San Francisco, CA, for defendant ML Settlement Services, Inc.

Jon C. Cederberg, Musick Peeler & Garrett, Los Angeles, CA, for defendant Structured Settlements Co.

Heather D. Rafter, Gibson Dunn & Crutcher, San Francisco, CA, for defendant Gakaher Settlements and Ins. Service Co., Inc.

Peter I. Ostroff, Sidley & Austin, Los Angeles, CA, Elroy H. Wolff, Sidley & Austin, Washington, DC, for defendant National Structured Settlements Trade.

## ORDER RE SUMMARY JUDGMENT

CONTI, Senior District Judge.

### I. INTRODUCTION

Plaintiff Weil Insurance Agency, Inc. ("Weil") was in the business of providing consulting services to tort plaintiffs on the costs of structured settlements. Defendants in this case are mainly brokers and life insurance companies who are involved in the structured settlement industry. Weil alleges that it was driven out of the industry by defendants' "defense only" policy of refusing to provide information on the costs of structured settlements to brokers who did business with tort plaintiffs.

Weil brought claims under section 4 of the Clayton Act, 15 U.S.C. § 15, for violations of section 1 and section 2 of the Sherman Anti-Trust Act, 15 U.S.C. §§ 1, 2. Weil also brought claims under the California antitrust statute, as well as an assortment of state law tort and breach of contract claims. Several of the defendants now join in moving for summary judgment on Weil's federal antitrust claims.

### II. STATEMENT OF FACTS

#### A. *The Structured Settlement Industry*

For the parties in tort suits, structured settlements offer several advantages over lump sum payments. First, the plaintiff is guaranteed a steady stream of income over a long period of time. Second, the money received by the plaintiff under a structured settlement is often tax-free. Third, the amount received by the plaintiff in a structured settlement is usually more than what the plaintiff would receive in a lump sum payment, and it can be provided at a lower cost to the defendant. Thus, the availability of structured settlements often encourages the settlement of tort suits.

Tort defendants finance structured settlements by purchasing annuities from life insurance companies, either directly or through the tort defendant's liability insurer. The sale is usually arranged by a structured settlement broker, who acts as a consultant to the tort defendant, defense counsel, and the defendant's liability insurer.

Weil alleges that certain life insurance providers have a practice of marketing their annuities through brokers that represent tort defendants exclusively. According to Weil, these brokers do not disclose the price of the annuity—that is, the cost of the structured settlement to the tort defendant—to the tort plaintiff or its representatives. Weil claims that the "defense only" policy is the result of an anticompetitive conspiracy between the life insurance companies, certain structured settlement brokers, and the National Structured Settlement Trade Association, all of whom are named as defendants in this action.

#### B. *Weil's Entry Into, and Exit From, the Structured Settlement Industry*

Weil began marketing structured settlements as a broker in 1985. In January 1986, Weil entered into an agency agreement (the "Richardson Contract") with A.J. Richardson & Associates ("Richardson" [1]), a specialized structured settlement broker. Under the Richardson Contract, Weil received quotes on annuities from the defendant life insurance companies, and placed structured settlements with tort defendants as an agent of Richardson. Weil did not deal directly with the defendant life insurance companies.

---

1. Richardson is not a party to this action.

Richardson notified Weil on several occasions that Richardson required Weil to quote the life insurance companies' annuity prices only to tort defendants or their liability insurers. However, Weil began providing specific quotations on annuity prices to tort plaintiffs as part of a consulting service Weil offered to the tort plaintiffs' bar. This enabled the tort plaintiffs to secure more favorable structured settlements. Not surprisingly, the demand for Weil's services increased substantially.

On August 4, 1989, Richardson terminated the Richardson Agreement, after complaints from certain defendant brokers and defendant life insurance companies. Shortly after its termination by Richardson, Weil was forced to discontinue its structured settlement business. Weil alleges that it was forced out of the business as a result of the defendants' defense only policy.

## III. SUMMARY JUDGMENT STANDARD

■ Summary judgment is proper only when there is no genuine issue of material fact or when, viewing the evidence in the light most favorable to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed.R.Civ.P. 56(c); *Bhan v. NME Hospitals, Inc.*, 929 F.2d 1404, 1409 (9th Cir.1991), *cert. denied* —— U.S. ——, 112 S.Ct. 617, 116 L.Ed.2d 639 (1991). The party moving for summary judgment has the burden of proving the absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

■ Once the moving party demonstrates the absence of any genuine issue of material fact, however, the burden shifts to the non-moving party to produce evidence sufficient to support a jury verdict in his favor. *Id.* at 255, 106 S.Ct. at 2513. To meet this burden, the nonmoving party must go beyond the pleadings and show "by her own affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

## IV. DISCUSSION

■ Section 4 of the Clayton Act allows any person "injured in his business or property by reason of anything forbidden in the antitrust laws" to sue for treble damages. 15 U.S.C. § 15. This section imposes a standing requirement on private parties who seek to enforce the antitrust laws. Even if the defendants violate antitrust laws, "the right of action under § 4 of the Clayton Act is available only to those private plaintiffs who have suffered *antitrust* injury." *ARCO v. U.S.A. Petroleum Co.*, 495 U.S. 328, 344, 110 S.Ct. 1884, 1893, 109 L.Ed.2d 333 (1990) (emphasis added).

■ The Supreme Court has held consistently that antitrust injury is not to be equated with injury in fact. *Id.* at 339 n. 8, 110 S.Ct. at 1892 n. 8; *see also Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977). "Antitrust injury does not arise for purposes of the Clayton Act until a private party is adversely affected by an *anticompetitive* aspect of the defendant's conduct." *ARCO*, 495 U.S. at 339, 110 S.Ct. at 1891 (citations omitted) (emphasis in original). Thus, the dispositive issue on this motion is whether Weil has any evidence that it has been injured in an anticompetitive manner by defendants' alleged conduct.

■ If the structured settlement industry's policy results in injury to anyone, it is to tort plaintiffs. If a tort plaintiff had access to the price of an annuity to the tort defendant, then the tort plaintiff could better estimate the top amount the defendant would pay to settle the case. This would give tort plaintiffs a stronger negotiating position in settlement negotiations, which would allow them to bargain for larger settlements. Thus, according to Weil, tort plaintiffs are injured by the industry's policy.

Assuming, without deciding, that being deprived of this negotiating advantage is an injury to tort plaintiffs, this is not the type of injury that the antitrust laws were designed to prevent. The cost of the annuities to the tort defendant is almost always privileged

work product information.[2] If tort plaintiffs were allowed to find out such information by hiring a consultant such as Weil, they would be able to obtain privileged information without the consent of the defense. Since tort plaintiffs have no right to this information, they have not suffered any legally cognizable harm from having it withheld from them.

Furthermore, tort plaintiffs and tort defendants are parties to an explicitly adversarial relationship. The purpose of the antitrust laws is "the prevention of restraints to free competition in business and commercial transactions." *Apex Hosiery Co. v. Leader*, 310 U.S. 469, 493, 60 S.Ct. 982, 992, 84 L.Ed. 1311 (1940). The antitrust laws are not intended to regulate negotiations between adversaries in litigation.

Most importantly to the issue in this motion, Weil itself is not a tort plaintiff. Weil therefore cannot recover under the Clayton Act by showing that tort plaintiffs somehow are injured by defendants' conduct. Weil must show that it suffered some antitrust injury to *itself.*

Weil has submitted no evidence which shows that it is injured in an anticompetitive manner from defendants' conduct. Weil's relevant competition, in this market, would be other structured settlement consultants who provided services to tort plaintiffs. Nothing about the alleged conspiracy in this case prevented Weil from continuing to act as a consultant to tort plaintiffs without disclosing the confidential information on annuity prices. Weil has admitted through discovery that this is a highly competitive market. Weil has offered no evidence to suggest that the defense only policy alleged by Weil has any effect on Weil's ability to compete in this market. On the contrary, the industry's defense only policy merely deprived Weil of an unfair advantage it gained over its competition. Thus, Weil has not suffered any antitrust injury.

Weil argues, however, that it does not need to show any antitrust injury to itself because of the nature of Defendants' alleged conduct. Certain restraints of trade have been held to be *per se* violations of the Sherman Act. Weil contends that defendants' conduct in this case amounts to an industry-wide boycott of a competitor, which according to Weil is a *per se* violation of the Sherman Act. Weil claims that it is not necessary to prove actual antitrust injury where the plaintiff can prove a *per se* violation by defendants. Thus, Weil argues, it can survive this motion for summary judgment without any showing of antitrust injury to itself.

Weil's contentions in this regard are unfounded. It is true that liability under the Sherman Act can be established by a showing of a *per se* violation, without any proof of actual antitrust injury to a private party. But the fact that a *per se* violation of the Sherman Act is involved is not dispositive of the issue of whether a private party has a right of action under the Clayton Act to seek treble damages for the alleged violation. The Supreme Court clearly has held that "even in cases involving *per se* violations, the right of action under § 4 of the Clayton Act is available only to those private plaintiffs who have suffered antitrust injury." [3] *ARCO*, 495 U.S. at 344, 110 S.Ct. at 1893.

Thus, this court need not determine whether the alleged conduct of Defendants is a *per se* violation of the Sherman Act. The

---

**2.** The price quotations given by the life insurance providers to the tort defendants are based on the defendants' evaluation of the tort plaintiff's expected life span, which is often based on the defendants' confidential evaluation of the plaintiff's injuries. This is clearly protected work product.

**3.** Weil tries to distinguish *ARCO* on the grounds that the *ARCO* case involved vertical price fixing, while this action alleges a horizontal agreement among the Defendants. However, the Supreme Court's holding in *ARCO* is clearly broad enough to encompass all forms of *per se* violations of the

Sherman Act. As the court noted in *ARCO*, "in a case involving horizontal price fixing, 'perhaps the paradigm of an unreasonable restraint of trade,' we observed that the plaintiffs were still required to 'show that the conspiracy caused *them* an injury for which the antitrust laws provide relief.' " 495 U.S. at 344, 110 S.Ct. at 1893–1894 (citing *Matsushita Elec. Ind. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 584 n. 7, 106 S.Ct. 1348, 1354 n. 7, 89 L.Ed.2d 538 (1986)) (emphasis in original). Given this language, Weil's attempt to distinguish *Arco* on its facts is misguided at best.

dispositive issue on this motion is whether Weil itself has suffered any antitrust injury. For the reasons given above, there is no genuine issue of fact whether Weil has suffered antitrust injury. Defendants' motion for summary judgment on Weil's federal antitrust claims therefore is granted.[4]

## V. CONCLUSION

In accordance with the foregoing, the court hereby enters summary judgment on plaintiff's claims under section 1 and section 2 of the Sherman Anti–Trust Act, 15 U.S.C. §§ 1, 2, as to the following defendants:

The Manufacturers Life Insurance Company;

Alexander Hamilton Life Insurance Co. of America;

First Colony Life Insurance Co.;

Galaher Settlements and Insurance Service Co., Inc.;

Kenneth H. Wells & Associates, Inc.;

Metropolitan Life Insurance Company;

ML Settlement Services, Inc.;

National Structured Settlements Trade Association;

The Prudential Insurance Company of America;

Ringler Insurance Agency; Ringler Associates Pacific, Inc.; Ringler Associates Sacramento, Inc.; Ringler Associates San Francisco, Inc.; Ringler Associates Bay Area, Inc.; Ringler Associates Inc. doing business as Ringler Associates Inc. of Delaware;

Robert S. Bell;

Safeco Life Insurance Company;

The Structured Settlements Company;

Transamerica Occidental Life Insurance Company.

IT IS SO ORDERED.

---

4. The parties have not briefed the court on whether the above issues are dispositive of Weil's claims under the California antitrust statute, so this court's Order does not address those claims.